IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

A. SUSAN MILLER, )
                  Plaintiff, )
        v. )
                       )
                       )
V.I. WHEEL ESTATE, LLC d/b/a )
PEPPERTREE TERRACE, )
                   Defendant. )

SX-18-CV-041

ACTION FOR DAMAGES
(JURY)

2020 VI Super 014

## MEMORANDUM OPINION

¶ 1    THIS MATTER comes before the Court on Defendant V.I. Wheel Estate's Motion For Summary Judgment, filed May 1, 2019; Plaintiff A. Susan Miller's Memorandum of Law in Support of Opposition to Defendant's Motion For Summary Judgment, filed June 3, 2019; and Defendant's Reply, filed June 25, 2019. The Motion came on for hearing November 5, 2019. For the reasons that follow, Defendant's Motion will be granted, and Plaintiff's Complaint will be dismissed with prejudice.

## BACKGROUND

¶ 2    Defendant V.I. Wheel Estate, LLC ("Peppertree") owns and operates Peppertree Terrace, a mobile home park on St. Croix. Peppertree leases lots to mobile home owners. Peppertree also owns some of the mobile homes in Peppertree Terrace and rents out those units. Plaintiff Susan Miller has lived in a mobile home on Peppertree Terrace lot 11-7 since approximately 1993, when the unit was owned by Kent Ellis, who died in 2000. Miller has been paying rent for lot 11-7 to Peppertree since she moved in, but never paid rent to Kent Ellis or his estate. Miller claims that Kent Ellis' wife, Roberta "Tinker" Ellis, also now deceased, sold her the unit for $1,500 in 1995, but Miller has not produced a receipt or a bill of sale. Peppertree claims that the mobile home unit on lot 11-7 was a non-marital asset that Kent Ellis owned before he married Roberta and became a part of his residual estate on his death and passed to his two daughters under his will. Motion, Exh. C, Affidavit of Kimberley Sue Hardtke. Resolution of the legal ownership of the mobile home unit on lot 11-7 is unnecessary to the determination of the Motion. It is undisputed that Miller resided in the mobile home located on lot 11-7 for many years before and at the time of Hurricane Maria.

¶ 3    On September 19, 2017, Hurricane Maria struck St. Croix. During the storm, a mobile home unit owned by Peppertree located on lot 11-8 came loose from its foundation and, Miller claims, crashed into the side of the trailer in which she was residing on adjacent lot 11-7. Neither Miller nor anyone else was physically present at Peppertree Terrace during the storm.

¶ 4    Miller filed the present action in January 2018. The Complaint alleges that Peppertree was negligent in failing to properly secure the mobile home unit on lot 11-8 and in failing to inspect and maintain the anchors, which negligence allegedly resulted in Peppertree's trailer being blown from its foundation, causing damage when it collided into the trailer in which Miller resided.

## LEGAL STANDARD

¶ 5    In evaluating a motion for summary judgment, the Court must determine whether there exists a genuine dispute of material fact; one that would impact the outcome of the case under applicable law. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379-80 (V.I. 2014) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)). A disputed issue is genuine if a reasonable trier of fact could determine that issue in favor of the non-moving party. *Id.* at 391-92. "Summary judgment is a drastic remedy [and] should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact," and that judgment is appropriate as a matter of law. *Id.* at 379-80.

¶ 6    Reviewing Defendant's Motion, the Court does not weigh the credibility of the evidence offered. Instead, all inferences from the evidence are drawn in favor of the nonmoving party, and any conflicting allegations, if properly supported by the record, are resolved in favor of the nonmovant. *See Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 527 (V.I. 2013) (citing *Williams*, 50 V.I. at 194-95). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Martin v. Martin*, 54 V.I. 379, 389 (V.I. 2010). If the "moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 391 (citation omitted). If the moving party does carry its initial burden to produce evidence of the absence of material facts in dispute, then "the burden shifts to the non-moving party to present 'affirmative evidence' from which a jury might reasonably return a verdict in his favor." *Chapman v. Cornwall*, 58 V.I. 431, 436 (2013) (citations omitted). In responding to the movant's evidence

showing the existence of no genuine issue of material fact, "the nonmoving party may not rest on its allegations alone, but must present actual evidence, amounting to more than a scintilla, showing a genuine issue for trial," regarding such disputed fact. *Perez*, 59 V.I. at 527-28.

¶ 7    "A party asserting that a fact... is genuinely disputed must...(B) support the assertion by: (i) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (ii) showing that the materials cited do not establish the absence... of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." V.I. R. Civ. P. 56(c)(1). Although the facts are to be interpreted in the light most favorable to the nonmoving party, the nonmoving party "may not rest upon mere allegations and must present actual evidence showing a genuine issue for trial." *Machado*, 61 V.I. at 379. "Importantly, there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Charles v. Arcos Dorados d/b/a McDonald's Restaurant*, 2019 VI 29, ¶ 13 (internal quotation and citations omitted).

¶ 8    To determine whether summary judgment is appropriate, the Court must determine the substantive law governing the cause of action. *See Perez*, 59 V.I. at 528. 43 In *Machado*, the Supreme Court of the Virgin Islands confirmed "the foundational elements of negligence—(1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff." 61 V.I. at 380. Miller has the burden of proving at trial each element of her claim of negligence by a preponderance of the evidence. *Id.* To defeat summary judgment, she must point to evidence in the record, not mere allegations, that demonstrates that, as to each element of negligence, a jury could reasonably return a verdict in her favor.

## DISCUSSION

¶ 9    By its Motion, Defendant contends that it is entitled to summary judgment because (1) Miller does not own the mobile home at issue, (2) Miller cannot prove any act or omission of

Peppertree caused her damages, and (3) Plaintiff is seeking recovery under the wrong measure of damages.[1] The second contention is dispositive.

¶ 10    To survive summary judgment, Miller is "required to provide sufficient competent evidence – direct or circumstantial – to support all the elements" of her negligence claim, "including the element of proximate causation." *Charles v. Arcos Dorados*, 2019 VI 29, ¶ 19 (summary judgment review of the elements, including causation, in a breach of implied warranty of merchantability claim).[2] She may not rely upon mere allegations of proximate cause, but must present actual evidence upon which a jury could find that Peppertree's negligence was the legal cause of damages incurred.

¶ 11    Peppertree argues that Miller's failure to present evidence in the form of expert opinion testimony on the issue of causation is fatal to her defense of the Motion. "Plaintiff has retained no engineer to opine about the standard of care that should have been employed by Peppertree, that there was anything wrong with the mobile home straps, or that had alternative strapping materials or methods been used, the alleged damages would not have occurred. Plaintiff requires expert liability testimony in this case because mobile home standards, metallurgy, and like issues at the core of causation in this case are not within the common understanding of jurors." Motion, at 13.

¶ 12    Plaintiff responds: "No technical or specialized knowledge is necessary to understand the facts of the case. The facts showing Peppertree's negligence here - the rusty and rotted anchors on the home on lot 7-1 [sic] are within the common experience of the average juror. Therefore, expert testimony is unnecessary." Opposition, at 7. Further, Miller argues that "It is certainly within the jurors' common understanding that mobile homes in a hurricane zone need to be securely anchored to their foundation. And a jury can easily determine, based on its experience, knowledge and

---

[1] Although Miller presents no expert testimony regarding liability, she proffers the expert report and Estimate of Michael P. Hand and Associates, Inc., General Contractor, to establish damages. As noted, (¶ 2, above), Miller claims to have purchased the unit on Peppertree Terrace lot 11-7 for $1,500 in 1995. Her expert estimates the repair cost of the trailer to be $176,952.80. Motion, Exh. R. The replacement cost is reported to be $112,300. "Since the replacement cost is less than the repair costs, Miller is seeking damages for replacement cost, plus annoyance, aggravation, and inconvenience. This measure of damages will make her whole." Because Plaintiff's proof on liability fails, the issue of the proper measure of damages is not addressed herein.

[2] The breach of implied warranty of merchantability claim in *Charles* related to an allegation of food poisoning. "Importantly, food poisoning cases are governed by the same basic rule of causation that governs other tort cases." 2019 VI 29, ¶ 18 (citation omitted).

common sense, that rusted and rotted anchors are not adequate to secure a mobile home and that Peppertree should [have] maintained or replaced them before the hurricane." *Id.*

¶ 13    The summary judgment record, viewed in the light most favorable to Plaintiff as the nonmoving party, includes no direct evidence of the condition of the "anchors" or means by which Peppertree's unit on lot 11-8, adjacent to Miller's, was secured to its foundation prior to and at the time Hurricane Maria struck St. Croix. Miller never personally inspected the "hurricane strapping" on her unit or on the Peppertree unit and is unaware whether there was any difference between how each was strapped down. Motion, Exh. A, Miller depos. at 88. Earl Mitchell, an employee of Peppertree, resided in the lot 11-8 trailer at the time of Hurricane Maria. He testified that approximately 13 years earlier, he had installed 16 straps to secure that unit, observing them periodically in the following years to confirm "it's still firm," and restrapping "any strap I see kind of old." Motion, Exh. T, Mitchell depos. at 8. There is no dispute that the unit on lot 11-8 came loose from its foundation during Hurricane Maria and "capsized," striking the porch of Miller's unit, causing damage to Miller's unit. Opposition, Exh. A, Ayala depos. at 14-15; Miller depos. at 79. Richard Gideon, a friend of Miller, visited her at Peppertree "in the couple weeks after the storm." He observed the adjacent Peppertree unit "upside down in a debris pile" after "that debris pile had been moved by a backhoe. So I'm not seeing the aftermath of the storm. I'm seeing what it looks like after it's been pushed back over onto that lot, 8-11." *Id.* Gideon depos. at 30-31. Gideon testified that he saw "maybe five" points of attachment in the concrete under the original location of the lot 11-8 unit, as well as "some anchors coming out of the concrete on the veranda deck. A couple of 'em was intact with no straps. A couple of 'em were gone. The stirrup that the strap attached to was gone." The "remnants of what was there indicated to me that there had been no maintenance whatsoever done to those straps. They were so rusted that they did not have the capability of doing their job." *Id.* at 31-32.

¶ 14    The operative Virgin Islands Rule of Evidence is as follows:

<u>Rule 701. Opinion Testimony by Lay Witnesses</u>

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[3]

¶ 15    In ruling on the Motion, the Court must determine whether, as Plaintiff avers, these facts are "within the common experience of the average juror," such that "a jury can easily determine, based on its experience, knowledge and common sense, that rusted and rotted anchors are not adequate to secure a mobile home." Opposition, at 7. To the contrary, Peppertree insists that a jury would necessarily need to speculate concerning causation if trial evidence does not include "scientific, technical, or other specialized knowledge" that can come in only through expert testimony.

¶ 16    The plaintiff in *Charles* "was permitted to support the causation element with the lay testimony that the McDonald's sandwich that she partially consumed caused her injuries, if such a conclusion related to a matter within a layperson's scope of knowledge. However, if the matter in issue is one within the knowledge of experts only and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert testimony in order to establish a *prima facie* case." 2019 VI 29, ¶ 19 (citations and internal quotation omitted). Here, Miller will survive summary judgment on the issue of causation through lay testimony only to the extent that the lay witness conclusions on causation are matters within a layperson's scope of knowledge. Conversely, if such conclusions regarding causation are not within the common knowledge of laypersons, Miller can only establish a *prima facie* case on the element of causation through expert testimony.

¶ 17    On appeal from the trial court's grant of summary judgment for failure of proof of the element of causation, Charles contended that the ruling "disregarded or discredited her ability, as a layperson, to discern what foods are good and fit for human consumption and what foods are not." Further, she argued that by Rule 701, "she was permitted as a layperson to testify as to what

---

[3] Rule 702. Testimony by Expert Witnesses

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

in her opinion, caused her to break out itching and with blisters as she did." *Id.* at ¶ 16.[4] The Supreme Court recognized that Charles, as a layperson, was permitted to testify about her personal symptoms and experience after consuming the McDonald's sandwich. However, her lay opinion that the sandwich caused her symptoms, based upon their onset shortly after its consumption, "is highly speculative and is not sufficient proof that the sandwich she partially consumed caused her injuries." *Id.* at ¶ 24. The trial court's entry of summary judgment was affirmed because Charles presented no affidavit or deposition of a physician or other expert with the necessary scientific, technical or other specialized knowledge, to "offer[] an opinion that there was a causal linkage between Charles' illness and the McDonald's sandwich that she partially consumed." *Id.*

¶ 18    Plaintiff cites *Berry v. City of Detroit*, 25 F. 3d 1342 (6th Cir. 1994) where, ironically, the Sixth Circuit reversed a jury verdict awarding damages of six million dollars in a police shooting case. The court determined that the plaintiff's evidence was insufficient to prove that defendant city's deliberate indifference in discipline of officers was a proximate cause of the shooting by the defendant officer. Specifically, plaintiff's expert witness did not have the qualifications to testify as an expert on the question and no proper foundation was laid for his ultimate opinion. In her Opposition here, Plaintiff quotes a selected part of the court's observation in dicta, which reads in full: "To the degree one might be tempted to argue that 'everyone knows that if discipline is lax more infractions occur,' this argument proves too much. If everyone knows this, then we do not need an expert because the testimony will not 'assist the trier of fact to understand the evidence or to determine a fact in issue . . . ' Fed. R. Evid. 702." *Id.* at 1350; *see* Opposition, at 7.

¶ 19    Contrary to Plaintiff's assertion here, everyone does not know about industry standards and methods of anchoring mobile homes to their foundations, or other related necessary prerequisites to a finding of liability against Peppertree. Despite Miller's claims, a trial jury cannot "easily determine, based on its experience, knowledge and common sense, that rusted and rotted anchors are not adequate to secure a mobile home." *Id.* Miller's lay witness Richard Gideon testified that anchoring devices that he saw on the Peppertree trailer on lot 11-8 "were so rusted that they did

---

[4] Summary judgment was entered by the trial court in *Charles* prior to the March 31, 2017 effective date of the Virgin Islands Rules of Evidence, during which time the Federal Rules of Evidence applied to matters in the Superior Court. *See* Act No. 1761, April 7, 2010. FRE 701 is substantively identical to VIRE 701. *See Charles*, 2019 VI 29, ¶ 16 n.4.

not have the capability of doing their job" Opposition, Exh. A, Gideon depos. at 32. That testimony is presented without foundation or explanation on a myriad of questions that are essential to "assist the trier of fact to understand the evidence" and to determine the facts in issue. Several include: what are the standards in the mobile home trailer industry for securing units of the size and weight of those at Peppertree to their foundations? What physical devises of what size, strength and metallurgic composition are utilized for that purpose to withstand hurricane force winds? To what extent did Peppertree's unit on lot 11-8 comply or fail to comply with those standards? Absent expert testimony from a person in the industry, an engineer or a metallurgist, the jury has no basis and is left to speculate on causation issues that can only be addressed by persons with the "scientific, technical or other specialized knowledge" referenced in the expert testimony standards of Rule 702.

¶ 20    The case of *Davis v. Hovensa, LLC,* 63 V.I. 475 (V.I. Super. 2015) is instructive. There, the plaintiff's negligence and products liability claims regarding injuries sustained while working with a water blaster were the subject of a motion for summary judgment. Among the movant's arguments was "that expert testimony is required as to any alleged defect to the ultra high pressure water blaster since the equipment is complex and beyond the knowledge and experience of an average person." 63 V.I. at 483. The plaintiff "argued that evidence regarding a change in pressure or a surge in the ultra high pressure water blaster is not the type of 'scientific, technical, or other specialized knowledge' requiring an expert opinion by FED. R. EVID. 702, and that his own testimony of the surge based on his experience and perception is sufficient." *Id.* at 484.

¶ 21    The *Davis* court granted summary judgment on the design defect claim, holding that

> contrary to Plaintiff's contention, the Court finds that the inner workings of the ultra high pressure water blaster and pressure surges is the type of evidence that is "scientific, technical, or other specialized knowledge" that falls within the scope of FED. R. EVID. 702. Ultra high pressure water blaster is a specialized equipment that most people are not familiar with. Accordingly, most people are not familiar with the inner workings of the ultra high pressure water blaster and whether pressure surges are possible. As such, expert testimony is required as to the alleged defect of the ultra high pressure water blaster and the reasonable alternative design.

63 V.I. at 492.

¶ 22    While the instant case sounds in negligence rather than products liability, the analysis of what is within the common understanding of the average juror is the same. Without expert testimony with regard to industry standards for securing mobile home trailers to their foundations

and the materials and methods required, testimony of lay witnesses "is highly speculative and is not sufficient proof" that acts and omissions of Peppertree caused the damages of which plaintiff complains. *Charles v. Arcos Dorados*, 2019 VI 29, ¶ 24. In response to Peppertree's Motion, Miller has not produced actual evidence or identified potentially admissible proof of the causal relationship between the manner by which Peppertree secured and maintained the anchoring system to its unit on lot 11-8 and the damages she claims. Because Plaintiff's proof is insufficient to prove the element of proximate causation, Peppertree's Motion will be granted.

## CONCLUSION

¶ 23     Peppertree moves for summary judgment on the grounds that: Plaintiff Miller does not own the mobile home on lot 11-7 concerning which she seeks damages; without expert evidence, Miller cannot prove that any act or omission of Peppertree caused her damages; and Miller seeks to recover damages under the wrong measure. The Court addresses only the issue of the sufficiency of Miller's proffer of proof of causation. Because the element of proximate cause can only be determined by proof requiring scientific, technical, or other specialized knowledge, Miller cannot rely upon lay opinion testimony under VIRE 701(c). In light of Plaintiff's failure to respond to the Motion by identifying potentially admissible evidence that could support a jury finding that acts and omissions of Peppertree caused her alleged damages, the Motion will be granted and Plaintiff's Complaint will be dismissed with prejudice. A Judgment Order enters herewith.

DATED: January 21, 2020.

_____
DOUGLAS A. BRADY, JUDGE

ATTEST:
ESTRELLA H. GEORGE
Clerk of the Court

By: _____
     Court Clerk Supervisor